**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Wayne Coley, ) | CIV 13-8281-PCT-MHB |
|          Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
|          Defendant. ) | |

Pending before the Court is Plaintiff Larry Wayne Coley's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning February 1, 2010. (Transcript of Administrative Record ("Tr.") at 12, 164-81.) His applications were denied initially and on reconsideration. (Tr. at 12, 60-107.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 129-30.) A hearing was held on August 29, 2012, (Tr. at 31-59), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 9-24). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff did engage in substantial gainful activity since February 1, 2010 – the alleged onset date. (Tr. at 14.) However, the ALJ found that there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. The ALJ clarified that the findings set forth in her decision address the period of time wherein Plaintiff did not engage in substantial gainful activity. (Tr. at 14.) At step two, she found that Plaintiff had the following severe impairments: coronary artery disease, cardiomyopathy, chronic pulmonary insufficiency (COPD)/emphysema, and lumbar spine degenerative joint disease. (Tr. at 15.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 15.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently climb ramps and stairs. He can occasionally climb ladders, ropes and scaffolds. He can frequently crawl. He must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation."[1] (Tr. at 15-19.) The ALJ determined that Plaintiff was capable of performing past relevant work as a night manager and roofing salesperson. (Tr. at 19-20.) Therefore, the ALJ

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1 concluded that Plaintiff has not been under a disability from February 1, 2010, through the
2 date of her decision. (Tr. at 20.)

## IV.  DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider his subjective complaints, and (2) failing to find that Plaintiff's alleged cervical radiculopathy and coronary conditions met a Listing.[2]

### A.   Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting his subjective complaints.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

---

[2] Plaintiff appears to assert an additional claim stating, generally as the heading of his argument, that the ALJ "misinterpreted evidence to the detriment of the claimant." Further, under this heading, Plaintiff states, "[b]y not citing the cervical problems as a severe impairment, one must assume that the ALJ did not understand the medical evidence in its entirety." Then, in the next paragraph, Plaintiff states that the ALJ "has misrepresented the evidence/opinion of Dr. Ostrowski as representing the entirety of the record, but clearly it does not." The Court finds this claim conclusory, non-specific, and difficult to follow. Thus, to the extent Plaintiff has intended to assert a claim under the heading the ALJ "misinterpreted evidence to the detriment of the claimant," Plaintiff's claim fails.

- 4 -

1  2007). The ALJ must identify "what testimony is not credible and what evidence undermines
2  the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

3  In weighing a claimant's credibility, the ALJ may consider many factors, including,
4  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,
5  prior inconsistent statements concerning the symptoms, and other testimony by the claimant
6  that appears less than candid; (2) unexplained or inadequately explained failure to seek
7  treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
8  activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495
9  F.3d 625, 637-39 (9th Cir. 2007).[3] The ALJ also considers "the claimant's work record and
10 observations of treating and examining physicians and other third parties regarding, among
11 other matters, the nature, onset, duration, and frequency of the claimant's symptom;
12 precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
13 ... ." Smolen, 80 F.3d at 1284 (citation omitted).

14 Plaintiff and his attorney appeared at an August 2012 hearing before an ALJ. (Tr. at
15 31-59.) Plaintiff admitted that he worked full-time from September 2011 through April
16 2012, driving a haul truck at a goldmine. (Tr. at 35, 40.) He testified that his employer laid
17 him off on May 4, 2012, because the company was having some problems. (Tr. at 40-42.)
18 Plaintiff admitted that he was not having any medical problems at that time. (Tr. at 41.)

19 Plaintiff testified that he could not work due to pain and heaviness in his chest. (Tr.
20 at 38.) He said that the C5, C6, and C7 vertebrae "exploded in my back from roofing over
21 the years." (Tr. at 38.) He indicated that he had numbness all the way down his right arm
22 and hand. (Tr. at 38.) However, he admitted that he had no problems driving the haul truck

---

[3] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

1 at the goldmine. (Tr. at 40-41.) Plaintiff also said stairs took his breath away, but admitted that he smoked cigarettes. (Tr. at 40.) He further admitted that he drank four to five beers with his son every few days. (Tr. at 40.)

Plaintiff's counsel repeatedly asked him if he felt he could work full-time. (Tr. at 42-49.) Plaintiff indicated that, "... I wouldn't have taken the mining job if I wasn't flat broke and about to lose my house." (Tr. at 43; Tr. at 45 ("It was either [drive a truck] or lose my house."), Tr. at 45 ("I needed money." ), Tr. at 46 ("I wouldn't have returned [to work] if I didn't need the money.").) Plaintiff testified that he had always performed very heavy physical work and he did not believe he had the energy to perform other kinds of work. (Tr. at 49.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made sufficient credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding his pain and limitations. Although the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, she also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. at 15-19.)

The ALJ explicitly outlined multiple inconsistencies that supported a finding that Plaintiff's claims were not entirely credible. First, the ALJ observed that Plaintiff's allegations were inconsistent with treatment notes showing that Plaintiff's conditions were controlled with medications; Plaintiff denied symptoms to treating physicians and described few, if any, complaints of difficulty with mobility or use of his extremities; heart studies demonstrated good exercise tolerance; physical examination findings consistently showed no neurological deficits; and Plaintiff did not demonstrate a good will effort to comply with recommended medical treatment as he continued to smoke and drink. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (adverse credibility determination was adequately supported where the ALJ found the claimant's allegations were undermined by her daily activities, demeanor and presentation to doctors, medical evidence, and evidence that her

1 impairment responded to treatment). Second, the ALJ noted that Plaintiff's allegations were
2 inconsistent with the medical source opinions of record. See Batson v. Comm'r of Soc. Sec.
3 Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ reasonably discounted the claimant's
4 allegations where it was contradicted by the opinion of a consultative physician). Third, the
5 ALJ found that, after his alleged onset of disability, Plaintiff worked full-time for eight
6 months as a haul truck driver and admitted that he stopped working due to a business-related
7 layoff rather than because of the allegedly disabling impairments. See Greger v. Barnhart,
8 464 F.3d 968, 972 (9th Cir. 2006) (ALJ reasonably rejected claimant's testimony where the
9 claimant reported that he did carpentry work "under the table" until a date well after his date
10 last insured); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (upholding adverse
11 credibility finding where claimant "stated at the administrative hearing and to at least one of
12 his doctors that he left his job because he was laid off, rather than because he was injured");
13 Elletson v. Astrue, 319 F. App'x 621, 622 (9th Cir. 2009) (unpublished) (ALJ reasonably
14 rejecting claimant's testimony where she previously worked at a physically demanding job
15 and left that job for reasons unrelated to her impairment). Lastly, the ALJ analyzed
16 Plaintiff's daily activities finding that said activities also reduced Plaintiff's credibility. "[I]f
17 the claimant engages in numerous daily activities involving skills that could be transferred
18 to the workplace, an adjudicator may discredit the claimant's allegations upon making
19 specific findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d
20 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228,
21 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than
22 alleged). The ALJ stated:

> [t]he records show that [Plaintiff's] symptoms do not occur on a frequent basis and the claimant has not complained of an inability to perform daily activities to his treating sources. Indeed, the claimant reported to his cardiologist he could perform "moderate activities without difficulty" ... . The undersigned notes that the claimant continues to care for himself, lift without problems, perform household chores, spend time with others, and engage in work activity that, at times, has been substantial ... .

27 While not alone conclusive on the issue of disability, an ALJ can reasonably consider a
28 claimant's daily activities in evaluating the credibility of his subjective complaints. See, e.g.,

1  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility
2  determination based in part of the claimant's abilities to cook, clean, do laundry, and help her
3  husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)
4  (upholding ALJ's credibility determination based in part on the claimant's abilities to cook,
5  clean, shop, and handle finances).
6       In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
7  allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
8  are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
9  is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
10 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
11 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
12 the Court finds no error.

13 **B.  The ALJ's Step Three Determination**

14      Plaintiff argues that the ALJ erred in her step three determination by failing to find
15 that his alleged impairments – cervical radiculopathy and coronary conditions – met a
16 Listing.
17      The Listings describe specific impairments of each of the major body systems which
18 are considered "severe enough to prevent a person from doing any gainful activity, regardless
19 of his or her age, education, or work experience" and designate "the objective medical and
20 other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(a), (c)(3),
21 416.925(a), (c)(3). A mere diagnosis is insufficient to meet or equal a listed impairment; a
22 claimant must establish that he or she "satisfies all of the criteria of that listing ... ." Id. at
23 §§ 404.1525(c)(3), (d), 416.925(c)(3), (d).
24      To equal a listed impairment, a claimant must establish symptoms, signs, and
25 laboratory findings "at least equal in severity and duration" to the characteristics of a relevant
26 listed impairment. See 20 C.F.R. §§ 404.1526 (explaining medical equivalence); 416.926
27 (same). Medical equivalence can be found for a listed impairment, an unlisted impairment,
28 or a combination of impairments. See id. §§ 404.1526(b), 416.926(b).

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." Lewis, 236 F.3d at 512; see Marcia, 900 F.2d at 176 (noting that the ALJ's unexplained finding at step three was reversible error). The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for his or her step three determination so long as the evidence is discussed in the ALJ's decision. See Lewis, 236 F.3d at 513. Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude that an impairment could meet or equal a Listing. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

Here, the ALJ found that:

> The claimant's impairments do not meet or equal any of the relevant immune or musculoskeletal listings including, but not limited to, listing 4.04 (entitled Ischemic heart disease), listing 4.02 (entitled Chronic heart failure), 3.02 (entitled Chronic pulmonary insufficiency) or 1.04 (entitled Disorders of the spine). Although the claimant has symptoms of shortness of breath and fatigue, he has nonetheless demonstrated clear lungs on examination, only mild pulmonary obstruction, and good exercise tolerance ... . The claimant has not experienced three separate ischemic episodes requiring coronary artery revascularization. Moreover, the claimant's ejection fraction on echocardiogram is greater than 30% and his left ventricular end diastolic diameter is less than 6 centimeters ... .

The Court, having reviewed the evidence of record and the ALJ's findings regarding the Listings at issue (1.04 – Disorders of the spine; 4.04 – Ischemic heart disease), finds that the ALJ adequately stated the foundations on which her ultimate conclusions were based, discussing at length, the objective medical evidence supporting her findings. (Tr. at 15-19.) Substantial evidence supports the determination that Plaintiff's impairments do not meet Listing 1.04 or Listing 4.04.

Listing 1.04 requires, among other things, evidence of nerve root compression characterized by findings of neuro-anatomic distribution of pain; limitation of motion of the spine; and motor loss (atrophy with associated muscle weakness or muscle weakness)

1  accompanied by sensory or reflex loss. See 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04.
2  In this case, physical examinations repeatedly demonstrated that Plaintiff generally had
3  normal and full muscle strength, normal gait and coordination, full range of motion, intact
4  sensation, and normal grip strength. (Tr. at 265, 276, 324, 413-15, 428, 476, 478, 479, 480,
5  483.) Although Plaintiff complained of neck pain and radicular right arm symptoms in late
6  2010, his radicular right arm symptoms resolved by February 2011 and his neck pain was
7  nonexistent by June 2011. (Tr. at 472-78.) Plaintiff admitted no medical problems interfered
8  with his job driving a haul truck at the goldmine from September 2011 through April 2012.
9  (Tr. at 40-41.)  In sum, the record does not contain the objective medical findings required
10 by Listing 1.04 and, thus, the ALJ reasonably found that Plaintiff's condition did not satisfy
11 the criteria of Listing 1.04.

12       As to Listing 4.04, the ALJ properly discussed the evidence that was relevant
13 according to the Listing (discussing exercise test results, examination findings, and ejection
14 fraction), and reasonably concluded that Plaintiff's condition did not satisfy the criteria of
15 Listing 4.04. (Tr. at 15.) Furthermore, Listing 4.04 requires that a claimant demonstrate that
16 his coronary artery disease "[r]esults in very serious limitations in the ability to
17 independently initiate, sustain, or complete activities of daily living." See 20 C.F.R. pt. 404,
18 subpt. P, app. 1, Listing 4.04. However, the record evidence here demonstrated that Plaintiff
19 could – and did in fact – work full-time from September 2011 through April 2012.

20       Accordingly, the Court finds no error.

## V.  CONCLUSION

22       Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
23 disability insurance benefits and supplemental security income. Consequently, the ALJ's
24 decision is affirmed.

25       Based upon the foregoing discussion,

26       **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
27 Security be affirmed;

28

1   **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
2   accordingly. The judgment will serve as the mandate of this Court.
3   DATED this 20th day of March, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge